IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| TRENT P. FISHER ENTERPRISES, LLC, et al., | : : : | Case No. 3:20-cv-00216 |
| | : | Judge Thomas M. Rose |
| Plaintiffs, | : : | Magistrate Judge Caroline H. Gentry |
| vs. | : : | |
| SAS AUTOMATION, LLC, et al., | : : | |
| Defendants. | : | |

## OPINION AND ORDER

Plaintiffs Trent P. Fisher Enterprises, LLC ("Fisher Enterprises") and The Fisher Family Dynasty Trust Dated July 19, 2007 ("Fisher Family Trust") filed this lawsuit against Defendant SAS Automation, LLC ("SAS") and Defendants Piab USA, Inc. ("Piab USA") and Piab AB (collectively "Piab"). This matter comes before this Court on Plaintiffs' Motion for Leave to File Third Amended Complaint Restating Dismissed Remedy Against Defendant Piab USA, Inc. And Piab AB And Clarifying Various Other Allegations to Confirm Facts Uncovered In Discovery ("Motion," Doc. 45). Defendants filed a Memorandum in Opposition (Doc. 52) and Plaintiffs filed a Reply Memorandum (Doc. 53). Having considered the parties' arguments, the Court GRANTS Plaintiffs' Motion for the reasons stated below.

I.     BACKGROUND

Plaintiffs' principal, Trent Fisher, sold Defendant SAS to Defendant Piab USA. In connection with the sale, Fisher executed two intellectual property-related agreements on

1

behalf of SAS and Plaintiffs. In the IP Assignment Agreement ("IPAA"), Defendant SAS agreed to give Plaintiff Fisher Family Trust intellectual property rights to certain assets referred to as "Carved-Out Assets." In the License Agreement, Defendant SAS agreed to give Plaintiff Fisher Enterprises a nonexclusive, worldwide, royalty-free license to continue to use other specified intellectual property.

Plaintiffs claim that Defendants SAS, Piab USA and its Swedish affiliate, Piab AB, breached both agreements. In June 2020, Plaintiffs sued Defendants for breach of contract, copyright infringement, trade secret misappropriation, and common-law conversion. (Doc. 1.) The Court described Plaintiffs' allegations in detail in its Order dated March 31, 2021 (Doc. 22).

Among other things, Defendants moved to dismiss Plaintiffs' demand for punitive damages in relation to their federal- and state-law trade secret misappropriation claims. (Doc. 10.) The Court granted this request for two reasons. First, Plaintiffs failed to plead facts that would suggest Defendants engaged in willful and malicious conduct, as is required to recover punitive damages. (Doc. 22, PageID #262-64.) Second, a limitation of liability provision in the License Agreement barred Fisher Enterprises from recovering punitive damages from SAS. (*Id*., PageID #265-67.)

In their Motion, Plaintiffs seek leave to amend their Complaint to replead their dismissed demand for punitive and/or exemplary damages with respect to their trade secrets claims against Piab USA and Piab AB only. Plaintiffs argue that facts uncovered in discovery, which are now alleged in the proposed Third Amended Complaint, support a demand for punitive damages with respect to these claims.

## II. LEGAL STANDARDS

### A. Amendment Under Federal Rule of Civil Procedure 15(a)

Federal Rule of Civil Procedure 15(a) governs a plaintiff's ability to amend the complaint. A complaint may be amended once as a matter of course within 21 days of service. Fed. R. Civ. P. 15(a)(1)(A). If a plaintiff wishes to amend the complaint after the 21-day period has expired, then he must obtain written consent of the opposing party or leave of Court. Fed. R. Civ. P. 15(a)(2).

The granting or denial of a motion to amend pursuant to Rule 15(a) is within the discretion of the trial court. Leave to amend a complaint should be liberally granted, *Foman v. Davis*, 371 U.S. 178 (1962), and this Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). The test for futility is whether the amended complaint could survive a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

### B. Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court is required to construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and determine whether the complaint contains "sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, to survive a motion to dismiss under Rule 12(b)(6), the complaint must include factual allegations that are both well-pleaded and plausible.

Factual allegations are well-pleaded if they are specific and support the plaintiff's claims. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (courts need not accept "non-specific factual allegations and inferences"). "[A] legal conclusion couched as a factual allegation" is not well-pleaded and need not be accepted as true. *Twombly*, 550 U.S. at 555; *see 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("[C]onclusory allegations … that the defendant violated the law" do not state a claim on which relief can be granted); *Frazier*, 41 F. App'x at 764 (6th Cir. 2002) (courts need not accept "unwarranted legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678; *see also 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (internal quotations and citation omitted) ("[T]he sufficiency of a complaint turns on its factual content, requiring the plaintiff to plead enough factual matter to raise a plausible inference of wrongdoing."). Whether an inference is plausible "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Iqbal*, 556 U.S. at 678.

4

## C.     Punitive Damages Under Federal And State Trade-Secret Laws

The federal Defend Trade Secrets Act ("DTSA") allows plaintiffs to recover punitive damages only in cases where trade secrets were misappropriated "willfully and maliciously." 18 U.S.C. § 1836(b)(3)(C). Similarly, the Ohio Uniform Trade Secrets Act ("UTSA") conditions an award of punitive damages on proof of "willful and malicious misappropriation." Ohio Rev. Code Ann. § 1333.63(B). Therefore, punitive damages are available for trade secret violations only where the misappropriation was both "willful, i.e., done with actual or constructive knowledge of its probable consequences," and "malicious, i.e., done with an intent to cause injury." 4 *Milgrim on Trade Secrets* § 15.02 (2020) (internal quotation marks omitted). "Malice" is not defined in the DTSA, but courts typically look to the state UTSA when interpreting the DTSA because the two are substantively identical. See, e.g., *Kuryakyn Holdings v. Ciro*, 242 F. Supp. 3d 789, 797 (W.D. Wis. 2017) (internal citation omitted). Under Ohio law, "malice" is the "state of mind under which a person intentionally does a wrongful act without a reasonable[,] lawful excuse and with the intent to inflict injury or under circumstances from which the law will infer an evil intent." *Criss v. Springfield Twp.*, 56 Ohio St. 3d 82, 84, 564 N.E. 2d 440 (1990) (citing *Black's Law Dictionary* 956 (6th ed. 1990)).

Even absent an intent to injure, malice can be shown where the defendant had a "conscious disregard for the rights of other persons." *Avery Dennison Corp. v. Four Pillars Enter. Co.*, 45 F. App'x 479, 489 (6th Cir. 2002). This remains, however, a high bar. The Ohio Supreme Court has held that the "conscious disregard for the rights of other persons" standard refers to a "mental state so callous in its disregard for the rights

5

and safety of others that society deems it intolerable." *Calmes v. Goodyear Tire & Rubber Co.*, 575 N.E.2d 416 (Ohio 1991). Thus, "[l]iability for punitive damages is reserved for particularly egregious cases involving deliberate malice or conscious, blatant wrongdoing which is nearly certain to cause substantial harm." *Spaulding v. Coulson*, No. 70524, 1998 Ohio App. LEXIS 4105, *16 (Ohio Ct. App. Sept. 3, 1998). "In other words, 'to warrant the imposition of additional punitive damages, above and beyond compensatory damages, the tort must be committed with a particularly depraved mental state,'" and mere "[r]ecklessness or carelessness" will not suffice. *Psychiatric Solutions v. Waller Lansden Dortch & Davis*, LLP, 2014 U.S. Dist. LEXIS 183594, *28 (N.D. Ohio June 4, 2014) (quoting *Spalding*, 1998 Ohio App. LEXIS 4105, *16).

### III. ANALYSIS

There are two issues before this Court. The first issue is whether the proposed Third Amended Complaint meets the pleading standard under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and therefore is not futile. The second issue is whether the Court should exercise its discretion to grant Plaintiffs leave to amend under Rule 15 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court answers both questions in the affirmative.

  **B.**  **The Proposed Third Amended Complaint Satisfies The *Twombly/Iqbal* Pleading Standard.**

In the original Complaint, Fisher Enterprises alleged that the following trade secrets were misappropriated: (1) the software for the mySAS App, (2) CAD Download software, and (3) related know-how. (Doc. 1, ¶ 53.) Fisher Enterprises claimed to have

6

the rights to these intellectual property assets (through the Fisher Family Trust) by virtue of the IP Assignment Agreement. (*Id.*) Although Fisher Enterprises did license these assets to SAS, it alleged that SAS misappropriated its trade secrets by using the relevant software and associated know-how to develop the piParts App, and further alleged that SAS disclosed these trade secrets to Piab. (*Id.*, ¶¶ 53, 93.) Fisher Enterprises alleged that Piab was liable for misappropriating trade secrets because it "knew or reasonably should have known that receipt and use of the Confidential Material were unlicensed and wrongful acts." (*Id.*, ¶ 98.)

The Court previously held that Fisher Enterprises had failed, in the original Complaint, to "plead facts that would entitle it to punitive damages in connection with the trade secret claims." (Doc. 22, PageID #262.) Specifically, the Court held that "[t]he Complaint does not plead factual matter that would suggest that SAS, Piab USA, or Piab AB engaged in any 'willful and malicious' conduct." (*Id.*, PageID #264.) The Court therefore dismissed Plaintiffs' demand for punitive damages with respect to the trade secret claims asserted against Piab. (*Id.*, PageID #271.)

The proposed Third Amended Complaint (Doc. 45-2) contains several new factual allegations that support Plaintiffs' request to re-plead a demand for punitive damages in connection with their trade secret claims:

- The material terms of the IPAA and License Agreement were disclosed to "numerous executives and managers at Piab USA, Piab AB and SAS." (*Id.*, ¶ 51.)
- Members of Defendants' "[k]ey management" learned that specific actions were prohibited by the IPAA and License Agreement. (*Id.*, ¶ 55.)

7

- Despite this knowledge, Defendants' management "turned a blind eye" to the alleged misappropriation of Plaintiffs' trade secrets. (*Id.*)

- Kevin Roundtree, a former SAS employee who later joined Piab AB, led the efforts to misappropriate Plaintiffs' trade secrets by "essentially verbatim copy[ing] the source code" despite his knowledge of the IPAA. (*Id.*, ¶ 56.)

- Defendants did not merely permit these allegedly unlawful actions to occur, but affirmatively encouraged them. (*Id.*, ¶ 57.)

- Mr. Roundtree deliberately copied, or substantially copied, the source code owned by Plaintiffs, and only changed the colors and branding. (*Id.*, ¶ 59.)

- Mr. Roundtree admits that he took these actions "with full authority from his bosses at SAS and Piab" and despite his knowledge that Plaintiffs owned the source code and that Piab needed to obtain prior approval from Plaintiffs before making any changes to the source code. (*Id.*)

- Piab deliberately concealed this misappropriation of Plaintiffs' intellectual property at the suggestion of Mr. Roundtree. (*Id.*, ¶ 62.)

- All of Mr. Roundtree's wrongful acts were done "with the approval and under the direction of senior management at Piab." (*Id.*, ¶ 71.)

- After this lawsuit was filed, Mr. Roundtree developed a new e-commerce platform for Piab that unlawfully continued to utilize Plaintiffs' trade secrets. (*Id.*, ¶ 76.)

The Court concludes that these new factual allegations, which Plaintiffs represent are based on information learned during discovery, are well-pleaded and state a plausible

8

claim that Defendants' conduct was both willful and malicious. See *Spaulding v. Coulson*, No. 70524, 1998 Ohio App. LEXIS 4105, *16 (Ohio Ct. App. Sept. 3, 1998) ("Liability for punitive damages is reserved for particularly egregious cases involving deliberate malice or conscious, blatant wrongdoing which is nearly certain to cause substantial harm."). Although Defendants argue that the new allegations are both untrue and insufficient to establish malice, those arguments should be presented to and decided by a finder of fact. At the pleading stage, the Court finds that the new allegations are sufficient. Therefore, because Plaintiffs' demand for punitive damages as a remedy for their trade secret claims would now (based on the new factual allegations) survive a motion to dismiss filed under Rule 12(b)(6), the proposed amendment is not futile.

    **C.**    **Leave To Amend Should Be Freely Granted And Defendants Have Not Demonstrated That Leave Should Be Denied In This Case.**

Under the liberal standard for amendment set forth in Rule 15(a), the Court finds that Plaintiff's Motion to Amend should be granted. Plaintiffs did not unduly delay the filing of the proposed Third Amended Complaint, which is based upon information obtained during discovery. There is no showing of bad faith. Defendants have not shown that amendment would be futile or that they would be unfairly prejudiced. Accordingly, Plaintiff's Motion to Amend is GRANTED.

## IV. CONCLUSION

For the reasons stated, Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. 52) is **GRANTED**. The Clerk is **ORDERED** to file the un-redlined Third Amended Complaint (Doc. 45-1) as the operative Complaint in this matter.

**IT IS SO ORDERED.**

                                                        */s/ Caroline H. Gentry*
                                                        Caroline H. Gentry
                                                        United States Magistrate Judge

Any party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio Civ. R. 72.4.