UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Trent P. Fisher Enterprises, LLC,** *et al.***,**

        *Plaintiffs,*

v.          Case No. 3:20-cv-216
         Judge Thomas M. Rose

**SAS Automation, LLC,** *et al.***,**

        *Defendants.*

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTION TO (1) STRIKE PLAINTIFF TRENT P. FISHER ENTERPRISES, LLC'S JURY DEMAND ON THE ISSUE OF PROFIT-BASED COPYRIGHT DAMAGES AND (2) BIFURCATE TRIAL. (DOC. 117)**

---

    Plaintiffs Trent P. Fisher Enterprises, LLC ("Fisher Enterprises") and The Fisher Family Dynasty Trust ("Fisher Trust") (collectively, "Plaintiffs") accuse Defendants SAS Automation ("SAS"), Piab USA, Inc. ("Piab USA"), and Piab AB (collectively, "Defendants") of copyright infringement, trade secret misappropriation, breach of contract, and violations of the Digital Millennium Copyright Act ("DMCA"). A portion of Plaintiffs' damages demands stems specifically from Fisher Enterprises' copyright infringement claims.

    Fisher Enterprises' claims for copyright infringement (Counts I – IV) stem from Defendant's alleged copying of the source code for mySAS App, a mobile application, and the

1

CAD Download Software, a function that allows users to quickly open and view product dimensional drawings. (See Third Amended Complaint, Doc. 98, ¶¶ 89-120). The Copyright Act allows a plaintiff to recover as damages for infringement "any profits of the infringer that are attributable to the infringement," by proving the infringer's gross revenue. 17 U.S.C. § 504(b). The statute states:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

Fisher Enterprises claims entitlement under 17 U.S.C. § 504(b) to the disgorgement of the profits that it says Defendants Piab USA and Piab AB derived from the allegedly infringing activity. (Doc. 98, PageID 6568.) In Plaintiffs' original Complaint, Fisher Enterprises purported to seek both its actual damages and the disgorgement of Defendants' profits as remedies for Defendants' alleged copyright infringement. (Doc. 1, Compl., PageID 28-29, ¶¶ 80, 87.) Fisher Enterprises does the same in Plaintiffs' Third Amended Complaint, which is now their operative pleading. (Doc. 98, Third Amended Complaint, PageID 6600-10, 6603-04, ¶¶ 95, 102, 111, 118.) Like the original Complaint, the Third Amended Complaint "demands a jury trial on all issues so triable in this case." (*Id.*, PageID 6616.)

Defendants moved for summary judgment on Counts I-IV, Doc. 81, but, because Plaintiffs enjoy a presumption of validity for having registered the copyright, and because Defendants can potentially show a reasonable relationship of damages exceeding $80,538 of

2

sales potentially reasonably related to the alleged infringement the Court denied Defendants' motion for summary judgment on Counts 1-4 of the Third Amended Complaint. (Doc. 129.)

Now, Defendants have moved pursuant to Federal Rule of Civil Procedure 39 for the Court to strike Fisher Enterprises' demand for a jury trial on the issue of whether Fisher Enterprises is entitled under Section 504(b) to recover any alleged profits earned by Defendants from the alleged copyright infringement.

**Analysis**

"The right to a jury trial is guaranteed by the Seventh Amendment and 'occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" *Allied Indus. Workers v. General Elec. Co.*, 471 F.2d 751, 755 (6th Cir. 1973) (citing *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935)). Besides the Seventh Amendment, a federal right to a jury trial may be provided by statute. *See Feltner v. Columbia Pictures TV*, 523 U.S. 340, 345 (1998). "Before inquiring into the applicability of the Seventh Amendment," the Court first must assure itself that it cannot fairly construe the statute in a manner "by which the [constitutional] question may be avoided." *Id.* (quoting *Tull v. United States*, 481 U.S. 412, 417 n.3 (1987)) (internal quotation marks omitted). If there is no statutory jury right, the Seventh Amendment supplies a jury right for "common-law causes of action" as well as "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the 18th century, as opposed to those customarily heard by courts of equity." *Id.* at 348 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989)).

However, the Court is required to strike a jury demand on a particular issue, "on motion or on its own," if it finds that "there is no federal right to a jury trial" on that issue and if at least

3

one party does not consent to trial by jury. Fed. R. Civ. P. 39(a), (c); *see also Whitson v. Knox Cty. Bd. of Educ.*, 468 F. App'x 532, 538 (6th Cir. 2012). If the Court finds there is no jury right, it is "prohibit[ed] . . . from submitting [that issue] to a binding jury in the absence of the defendant's consent." *Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*, 858 F.3d 666, 674 (1st Cir. 2017); Fed. R. Civ. P. 39(c)(2) (providing that "[i]n an action not triable of right by a jury," the court may "try any issue by a jury" only "with the parties' consent").

The Court has discretion to grant a motion to strike a jury demand at any point. *See, e.g., Kinzel v. Bank of Am.*, 2013 U.S. Dist. LEXIS 124506, at *6 (N.D. Ohio Aug. 30, 2013) ("Parties have a great deal of latitude on the timing of motions to strike a jury demand. Because a court has the power to act *sua sponte* at any time . . . it follows that a court has the discretion to permit a motion to strike a jury demand at any time, even on the eve of trial."); *see also Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 226-27 (3d Cir. 2007) (affirming a district court's order granting a motion to strike a jury demand that was filed six weeks prior to trial and after summary judgment briefing was complete because district courts have "discretion to permit a motion to strike a jury demand at any time."); *United States v. Schoenborn*, 860 F.2d 1448, 1455 (8th Cir. 1988) (similar).

The Copyright Act does not provide a right to a jury on the issue of disgorgement of profits. *Navarro v. Procter & Gamble Co.*, 529 F. Supp. 3d 742, 747-51 (S.D. Ohio 2021)(Cole, J.); *Fair Isaac Corp. v. Fed. Ins. Co.*, 468 F. Supp. 3d 1110, 1113-14 (D. Minn. 2020). Section 504(b) provides that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The Supreme Court has held that the adjacent provision on statutory damages, Section

4

504(c), does not confer a statutory right to a jury trial. *See Feltner*, 523 U.S. at 345. Specifically, in *Feltner*, the Court concluded that Section 504(c) does not grant a jury right on the issue of statutory damages because the provision does not "mention . . . a right to a jury trial, or, for that matter . . . juries at all." *Id*. at 346. It also "does not use the word 'legal' or other language denoting legal relief or rights." *Id*. at 347. This reasoning is equally applicable to an award of the defendant's profits under Section 504(b).

Like Section 504(c) on statutory damages, Section 504(b) does not expressly, or implicitly, provide for a right to a jury determination of profits. There is no mention of "juries at all," nor does the provision include any language denoting legal rights. *Feltner*, 523 U.S. at 346-47. Thus, while Section 504(b) allows a copyright owner to recover actual damages or profits attributable to infringement, "it says nothing about who—a judge or a jury—should determine the magnitude of either or both." *Navarro*, 529 F. Supp. 3d at 747. "When Congress wants to create a right to trial by jury, it knows how to say so, and it has not done so here." *Id*. at 748 (citing *Fair Isaac*, 468 F. Supp. 3d at 1113-14).

The "history and development" of the Copyright Act confirm that that it was not intended to provide a right to a trial by jury on the issue of profit disgorgement. *Navarro*, 529 F. Supp. 3d at 748. When Congress enacted the first Copyright Act in 1790, the statute did not include a "statutory provision for the recovery of profits, but that recovery had been allowed in equity both in copyright and patent cases as appropriate equitable relief incident to a decree for an injunction," "not to inflict punishment but to prevent an unjust enrichment." *Id*. (quoting *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399-401 (1940)).

While Congress added an explicit reference to profits-based damages in the 1909 amendment to the Copyright Act, "[g]iven its history as a form of equitable relief, there is little

5

reason to believe that Congress would have intended, by implication, to create a jury trial right when it added this relief to the statute." *Id.* Indeed, following those amendments, the Supreme Court continued to observe that "[b]oth the Copyright Act and our decisions leave the matter" of apportioning profits "to the appropriate exercise of equity jurisdiction upon an accounting." *Sheldon*, 309 U.S. at 402.

Nor is there reason to believe that Congress intended to change the status quo when it enacted the current Section 504(b) as part of its revisions to the Copyright Act in 1976. On the contrary, the congressional record of those revisions confirms that the new Section 504(b) was not intended to provide a jury right, as it expressly contemplated that the court, not a jury, would determine the appropriate amount of relief: "[W]here some of the defendant's profits result from the infringement and other profits are caused by different factors, it will be necessary for the court to make an apportionment." *Fair Isaac*, 468 F. Supp. 3d at 1114 (quoting H.R. 94-1476, at 161 (1976)); *see also Navarro*, 529 F. Supp. 3d at 749. In short, "given the Copyright Act's abject silence on juries, the Act does not create a statutory right to a jury trial on the issue of such damages, whether expressly or by implication." *Navarro*, 529 F. Supp. 3d at 751.

Neither does the Seventh Amendment supply a right to a jury on a claim for disgorgement of profits. It provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. By limiting the jury right to "[s]uits at common law," the Amendment is understood to have "preserve[d] the basic institution of jury trial in only its most fundamental elements." *Tull*, 481 U.S. at 426 (quoting *Galloway v. United States*, 319 U.S. 372, 392 (1943)). That is, the jury trial guarantee applies only to "suits in which legal rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and

6

equitable remedies [are] administered." *Osborn v. Griffin*, 865 F.3d 417, 460 (6th Cir. 2017) (alteration in original) (quoting *Curtis v. Loether*, 415 U.S. 189, 193 (1974)).

To determine whether the Seventh Amendment preserves the jury right with respect to a particular claim, courts "first compare the case at issue to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity, and then examine the remedy sought and determine whether it is legal or equitable in nature." *Id*. at 460-61 (quoting *Wilson v. Big Sandy Health Care, Inc.*, 576 F.3d 329, 332 (6th Cir. 2009)) (internal quotation marks and citations omitted).

The second factor—the remedy sought—is given more weight. *Tull*, 481 U.S. at 421. "The Supreme Court repeatedly has asserted that the second part of [the] test is more important than the first." *Fair Isaac*, 468 F. Supp. 3d at 1114 (citing *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990)). "[I]f disgorgement of [Defendant]'s profits was not available at law for the kind of wrong at issue here, [Plaintiff] does not have a constitutional right to a jury determination on the disgorgement question." *Id*. In other words, "even if 'the suit' is legal, and thus gives rise to a jury trial right in general, the court must also examine 'the particular trial decision' at issue, to see whether there is a jury trial right as to that issue." *Navarro*, 529 F. Supp. 3d at 752 (quoting *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708 (1999)). "Accordingly, the question here comes down to whether the profits[-]based remedy in § 504(b) is a legal remedy, in which case there is a constitutional right to a jury, or an equitable remedy, in which case there is not." *Id*.

A request for profits attributable to copyright infringement is an equitable remedy, both as a matter of general principle and as a historical matter in the copyright realm. There is therefore no jury right on this issue. Disgorgement sits "squarely within the heartland of equity."

7

*Liu v. S.E.C.*, 140 S. Ct. 1936, 1943 (2020). It "reflect[s] [the] foundational principle [that] [i]t would be inequitable that a wrongdoer should make a profit out of his own wrong." *Id*. (citation and internal quotation marks omitted); *see also Tull*, 481 U.S. at 422-23; *Terry*, 494 U.S. at 570 (1990); *Feltner*, 523 U.S. at 352. Disgorgement is equitable because it "is not available primarily to compensate victims." *Osborn*, 865 F.3d at 461 (quoting *S.E.C. v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006)) (internal quotation marks omitted). It is akin to other historic forms of equitable relief, including "accounting, constructive trust, and restitution." *Id.* at 462 (quoting *Cavanagh*, 445 F.3d at 119).

Indeed, the Sixth Circuit and other Courts of Appeals have found no Seventh Amendment right to a jury on the issue of profits disgorgement in other types of intellectual property cases, such as trademark and trade secrets disputes. *See, e.g., Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991) (holding that there was no right to a jury trial in a trademark infringement action when the complaint requested "only equitable relief; an injunction and disgorgement of profits."); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1065 (9th Cir. 2015) (holding in a trademark infringement case that "[t]he Seventh Amendment does not require that a jury calculate these profits, because juries have not traditionally done so, and a claim for profit disgorgement is equitable in nature."); *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343 (11th Cir. 2019) (granting a motion to strike a jury demand in a trademark infringement action because "disgorgement of a defendant's profits…is equitable in nature and does not carry with it a right to a jury trial."); *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1324-25 (Fed. Cir. 2018) (concluding that disgorgement of profits would not "have been available at law for the [claim of] trade secret misappropriation"). There is "no reason to treat disgorgement under the Copyright Act

differently." *Navarro*, 529 F. Supp. 3d at 753; *see also Fair Isaac*, 468 F. Supp. 3d at 1114 (concluding there is no right to a jury trial on the disgorgement of profits remedy in copyright cases). Indeed, "[b]ased on the history of the disgorgement award in actions for copyright infringement, there can be little question that such awards are equitable, rather than legal." *Navarro*, 529 F. Supp. 3d at 752.

Ever since the passage of the Copyright Act in 1790, recovery of the infringer's profits was allowed in equity, "as appropriate equitable relief incident to a decree for an injunction," and the remedy retained its equitable status even after it was codified in the 1909 amendments to the Act. *Sheldon*, 309 U.S. at 399, 402. In light of the equitable nature of a claim for disgorgement of profits in copyright cases, there is no Seventh Amendment right to try the question of disgorgement of profits to a jury. Because "the weight of authority holds that actions seeking disgorgement of ill-gotten gains are equitable in nature," "a jury trial [is] not required for [such] claims." *Osborn*, 865 F.3d at 461.

While Plaintiff asserts, "the construction of § 504(b) to require a trial by jury on both actual and profit damages is not just 'fairly possible.' The Supreme Court in *Feltner* strongly suggested that interpretation is correct." (Doc. 125, PageID 7525.) This assertion appears at odds with the text of *Feltner* where it discusses: "actions for monetary relief that we have characterized as equitable, such as actions for disgorgement of improper profits." *Feltner* , 523 U.S., at 352, (citing *Teamsters v. Terry*, 494 U. S. 558, 570-571 (1990); and *Tull*, 481 U.S., at 424.).

Because Fisher Enterprises has no right under either the Copyright Act or the Seventh Amendment for a jury to determine the issue of profit disgorgement for copyright damages, and

9

Defendants do not consent to try it by jury, the Court **GRANTS** the motion to strike Fisher Enterprises' jury demand on that issue.

**Bifurcation**

The Court "may order a separate trial of one or more separate issues" in a case, "for convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b); *see also In re Beverly Hills Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982) (noting that a court considering bifurcation of a trial "must consider several issues such as potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy which would result"). "Only one of these criteria need be met to justify bifurcation." *Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996). Among other things, Rule 42(b) gives district courts the discretion to "bifurcate the issue of liability from the issue of damages," so that, "if liability is found, the issue of damages can be decided by a special master or by another method." *Olden v. LaFarge Corp.*, 383 F.3d 495, 509 (6th Cir. 2004). Indeed, "'[t]he Advisory Committee Note to the 1966 amendment, though cryptic, suggests that . . . the changes in Rule 42 were intended to give rather delphic encouragement to trial of liability issues separately from those of damages, while warning against routine bifurcation of the ordinary negligence case.'" *In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988) (quoting 9 C. Wright, A. Miller F. Elliott, *Federal Practice Procedure*, § 2388 at 280 (1971 Supp. 1987)).

District courts generally have discretion to determine whether to bifurcate, based "on the facts and circumstances of each case." *Saxion*, 86 F.3d at 556. Where a court divides a trial on legal and equitable issues, however, all issues to which a jury right attaches must first be tried to a jury before equitable issues are tried to the judge. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959); *Nat'l Union Elec. Corp. v. Wilson*, 434 F.2d 986, 988 (6th Cir. 1970).

Here, if this case proceeds to trial, the purely equitable issue of whether Fisher Enterprises is entitled to copyright damages in the form of Defendants' profits will be bifurcated from the rest of the issues in the case, all of which are legal in nature.

Specifically, the liability portion of Fisher Enterprises' copyright infringement claims will first be tried to a jury, together with the liability and damages portions of Plaintiffs' other surviving claims. If the jury found Defendants liable for copyright infringement, then it would be for the Court to decide following a bench trial the separate damages issue of whether Fisher Enterprises was entitled to an award of Defendants' profits under Section 504(b) as an equitable remedy for their copyright infringement and, if so, in what amount. *See RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, 445 F. Supp. 3d 1327, 1341-42 (D. Colo. 2020); *Illinois Tool Works, Inc. v. MOC Prods. Co., Inc.*, 946 F. Supp. 2d 1042, 1044 (S.D. Cal. 2012) ("Because legal and equitable issues are committed to different factfinders, 'it is common and appropriate to hold separate jury and bench trials on the different issues.'" (quoting Peter S. Menell et al., *Patent Case Management Judicial Guide* 8-4 (2009)).

The Court finds that bifurcation of these issues promotes judicial economy. The issue of profit-disgorgement damages involves evidence and expert testimony that is irrelevant to any other issues in this case. To prove its entitlement to disgorgement, Fisher Enterprises would first have to meet its evidentiary burden of establishing which specific portions of Defendants' revenues are "reasonably related" to the alleged infringement of its copyrights. *Balsley v. LFP, Inc.*, 691 F.3d 747, 769-70 (6th Cir. 2012). Defendants would then have the burden of "sorting out which of these 'reasonably related' gross revenues are actually profits (i.e., net[] out expenses), and of those profits, which are actually attributable to the infringement." *Navarro v. P&G*, 501 F. Supp. 3d 482, 497 (S.D. Ohio 2020) (citing *Balsley*, 691 F.3d at 768). Thus, to

resolve the issue of profit-disgorgement damages, the Court would have to hear testimony regarding the impact that Defendants' allegedly infringing use of the piPARTS App and the CAD Download Software had on their revenues. The Court would also have to hear testimony from the parties' economic experts regarding the specific costs and expenses (e.g., costs of goods, freight costs and other non-allocated costs of goods, operating expenses, etc.) that should be deducted from Defendants' sales revenues in order to arrive at the resulting profits. (*See*, *e.g.*, Doc. 79-6, Hock Report, PageID 5651-55, 5651-73 (Defendants' damages expert providing his analysis of deductible costs).) However, none of this evidence would have any bearing on any issues that the jury would have to resolve.

In contrast to Fisher Enterprises' copyright infringement claims, Plaintiffs do not seek the disgorgement of Defendants' profits in connection with any of their other, non-copyright claims. With respect to their claims for trade secret misappropriation and breach of the License Agreement, Plaintiffs seek damages in the form of a hypothetical reasonable royalty that their expert says they would have negotiated with Defendants prior to Defendants' alleged misappropriation of Plaintiffs' alleged trade secrets. (Doc. 82, Defs' MSJ, PageID 5712-14.) According to Plaintiffs' expert, this form of damages is meant to reflect "the loss in value of the trade secrets" to Plaintiffs. (Doc. 79-1, Saitz Report, PageID 5543, ¶ 64.) It is not a measure of the profits that Defendants supposedly gained from their alleged misappropriation of trade secrets. Similarly, with respect to Plaintiffs' claim for breach of the Intellectual Property Assignment Agreement, Plaintiffs seek the profits they allegedly lost as a result of the breach. (Doc. 82, Defs' MSJ, PageID 5714.) Finally, with respect to their Digital Millennium Copyright Act claim, Plaintiffs seek statutory damages only. (*Id.*)

Accordingly, bifurcating the profit-disgorgement issue for a separate bench trial would allow the parties to tailor their presentations during the jury portion of the trial to only that evidence that actually mattered to the jury's decision. Moreover, in the event the jury returned a liability verdict in Defendants' favor on Fisher Enterprises' copyright infringement claims, the issue of Fisher Enterprises' entitlement to Defendants' profits under Section 504(b) would be moot. Accordingly, bifurcation would ensure that the parties and the Court did not needlessly expend significant time and resources on an issue that may never have to be decided. *See In re Beverly Hills*, 695 F.2d at 216-17 (affirming order bifurcating causation issue for jury to decide first, because the need for "extensive and expensive" proof on other issues "might be mooted by an adverse finding on the causation issue").

Plaintiffs propose, as an alternative, that the Court could also allow the jury to issue an advisory verdict on the issue of profit-based copyright damages to avoid a second trial, citing *Navarro*. (Doc. 125, PageID 7521.) In *Navarro*, there was overlap between evidence to support claims of actual damages for the defendant's alleged infringement of her copyrights and the profit-disgorgement request so as to justify having the jury provide an advisory verdict since the jury was going to hear the profits-related evidence anyway during the plaintiff's presentation of her actual damages case. *Navarro*, 529 F. Supp. 3d at 754. Here, any actual damages for Defendants' alleged copyright infringement and its other remaining claims and the damages it seeks in connection with those claims are different in nature and scope compared to its copyright infringement claims.

The Court also finds that, in light of the evidence specific to the profit-disgorgement inquiry, bifurcation also ensures that the jury will not be confused by extraneous evidence that has no relevance to its task. *See RCHFU*, 445 F. Supp. 3d at 1341-42 (reserving judicial

determination of equitable issues, including disgorgement, until "after the jury's resolution of the legal issues" due to relevance, prejudice, and confusion concerns); *Illinois Tool Works*, 964 F. Supp. 2d at 1046 (bifurcating equitable issues from legal issues for trial where the evidence on the equitable issue "could needlessly confuse the jury and tempt them to improperly decide the patent infringement claims on the basis of equitable factors").

The jury may be tasked with hearing and evaluating fact and expert witness testimony related to the merits of Fisher Enterprises' copyright infringement claims, including but not limited to the applicability and impact of the open-source GNU General Public License, as well as all of the evidence on liability and damages pertaining to Plaintiffs' surviving non-copyright claims. Trying the profit-disgorgement issue at the same time as all of these other issues would necessarily expose the jury to hours of testimony that is not relevant to their deliberations. This would only serve to confuse the jury and invite it to consider improper evidence in its deliberations.

Finally, the Court finds that bifurcation will avoid any potential unfair prejudice to Defendants that might be caused by evidence respecting their total revenues and profits being presented before the jury. Defendants' total revenues and profits are not relevant to any of the claims or defenses that the jury would have to decide and permitting Fisher Enterprises to present evidence of Defendants' "deep pockets" could contaminate the jury's evaluation of the merits of Plaintiffs' claims. Bifurcation would eliminate this risk. *See RCHFU*, 445 F. Supp. 3d at 1341–42 (bifurcating equitable claims from legal ones because "evidence of Marriott's profits or net worth" was irrelevant to legal claims and damages and "runs the risk of prejudicing defendants or confusing the jury"); *Illinois Tool Works*, 946 F. Supp. 2d at 1046 (bifurcating equitable issues from legal ones where equity-related evidence "may contaminate [the jury's]

factual findings on legal issues" relating to patent infringement "which must be made strictly on the basis of the evidence and the law, without reference to considerations of fairness or equity").

**Conclusion**

Because Fisher Enterprises has no right under either the Copyright Act or the Seventh Amendment for a jury to determine the issue of profit disgorgement for copyright damages, and Defendants do not consent to try it by jury, the Court **GRANTS** Defendants' motion to strike Fisher Enterprises' jury demand on that issue. Because it will avoid prejudice and undue confusion while providing convenience and economy of time, the Court **BIFURCATES** the issue of disgorgement of profits for copyright infringement from the rest of the issues to be tried to the jury, including the merits of Fisher Enterprises' copyright infringement claims and all other issues that remain for trial. Should the jury find in Fisher Enterprises' favor on the merits of its copyright infringement claims, the profit-disgorgement issue will be decided by the Court following a separate bench trial.

The case remains set for trial on January 8, 2024. (Doc. 122.)

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, November 13, 2023.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

15